UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JUSTIN and ADRIANA SKAINS, ) <br> on behalf of two minor children, et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> LAKE CENTRAL SCHOOL ) <br> CORPORATION, et al., ) <br> ) <br> Defendants. ) | Case No. 2:21-cv-394 |

**OPINION AND ORDER**

This matter is before the court on the Motion for Summary Judgment [DE 36] filed by the defendants on March 30, 2023. For the following reasons, the Motion for Summary Judgment is **GRANTED**.

*Background*

The plaintiffs are parents of students who attended Lake Central School Corporation (LCSC) during the inception of the COVID-19 pandemic. On November 24, 2021, the plaintiffs initiated this lawsuit in state court on behalf of their minor children against the LCSC, its superintendent Larry Veracco, and several administrators (collectively, LCSC in this Order). The case was timely removed to federal court on December 21, 2021. In their Amended Complaint, the plaintiffs allege that the LCSC's policies following the onset of the COVID-19 pandemic were unlawful and unconstitutional. Specifically, the plaintiffs contend that the LCSC's policies related to masking, contact tracing, and quarantining violated various provisions of the Indiana State Constitution, Indiana Quarantine Laws, as well as their First and Fourth Amendment rights guaranteed under the United States Constitution.

On March 30, 2023, the LCSC filed the instant motion for summary judgment. The plaintiffs responded in opposition on June 9, 2023, and LCSC filed its reply on June 29, 2023.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment. As a result, this court has jurisdiction to decide this case pursuant to **28 U.S.C. § 636(c)**.

### *Undisputed Material Facts*

The plaintiffs are all parents of students who attended schools within the Lake Central School Corporation during the emergence of the COVID-19 pandemic. DE 20, ¶¶ 1-7. Like many schools throughout the nation, the LCSC implemented and maintained remote learning during the 2019-2020 school year. In August 2020, the LCSC decided to re-opened schools for in-person learning after receiving negative feedback from families and staff regarding their remote learning experience. Veracco Dep. 25:14-17, Sept. 12, 2022. As part of the re-opening process, the State of Indiana mandated that the LCSC report positive cases of COVID-19, as well as perform contact tracing and implement quarantine procedures to students who tested positive. Veracco Dep. 26:4-20. During the 2020-2021 school year, the LCSC complied with the state mandates and took the added precaution of requiring students to wear masks. Veracco Dep. 26:1-9.

On August 2, 2021, the LCSC held a public-school board meeting and, in part, discussed whether masks should be mandatory for the 2021-2022 school year. Veracco Dep. 32:1-15. During the meeting, the LCSC board voted against the motion to make masks mandatory and voted for optional masking. Plf.'s Ex. 3 at 3. On August 4, 2021, LCSC Superintendent Larry Veracco posted notice of a special meeting to be held on August 6, 2021. Veracco Dep. 35:4-9. At the special meeting on August 6, 2021, the LCSC board again addressed the masking

2

requirements and decided to reverse course, voting for mandatory masking for all students and staff, regardless of vaccination eligibility. *See* Plf.'s Ex. 6. The public did not have any input during the special meeting on August 6, 2021. Malchow Dep. 31:16-19, Sept. 14, 2022.

In determining that masks would be mandatory during the 2021-2022 school year, the LCSC reviewed the executive orders from the Governor of Indiana, as well as data from the American Pediatrics Association, the Indiana Department of Health, the Center for Disease Control (CDC), as well as local medical facilities. Sues Dep. 47: 3-15, Sept. 27, 2022. The plaintiffs assert that the LCSC's policies related to masking, contact tracing, and quarantine procedures violated their Due Process under the Indiana Constitution; violated Indiana Quarantine Laws; constituted an illegal search and seizure under the Indiana Constitution; violated the Equal Privileges and Immunities provision under the Indiana Constitution; violated their Fourth Amendment rights under the United States Constitution; violated their rights to peaceably assemble under the First Amendment; and the Amended Complaint asserts federal jurisdiction under 42 U.S.C. § 1983. DE 20.

## *Discussion*

Under **Federal Rule of Civil Procedure 56(a)**, summary judgment is proper only if the movant has shown that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); ***Garofalo v. Vill. of Hazel Crest***, 754 F.3d 428, 430 (7th Cir. 2014); ***Kidwell v. Eisenhauer***, 679 F.3d 957, 964 (7th Cir. 2012); ***Stephens v. Erickson***, 569 F.3d 779, 786 (7th Cir. 2009). A fact is material if it is outcome determinative under applicable law. The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. ***Adickes v. S.H. Kress & Co.***, 398

U.S. 144, 160 (1970); **Stephens**, 569 F.3d at 786.

When the movant has met its burden, the opposing party cannot rely solely on the allegations in the pleadings but must "point to evidence that can be put in admissible form at trial, and that, if believed by the fact-finder, could support judgment in [her] favor." **Marr v. Bank of Am., N.A.**, 662 F.3d 963, 966 (7th Cir. 2011); *see also* **Steen v. Myers**, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting **Hammel v. Eau Galle Cheese Factory**, 407 F.3d 852, 859 (7th Cir. 2005) (summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events.")). The non-moving party cannot rely on conclusory allegations. **Smith v. Shawnee Libr. Sys.**, 60 F.3d 317, 320 (7th Cir. 1995). Failure to prove an essential element of the alleged activity will render other facts immaterial. **Celotex**, 477 U.S. at 323; **Filippo v. Lee Publications, Inc.**, 485 F. Supp. 2d 969, 972 (N.D. Ind. 2007) (the non-moving party "must do more than raise some metaphysical doubt as to the material facts; she must come forward with specific facts showing a genuine issue for trial").

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248 (1986); **McDowell v. Vill. of Lansing**, 763 F.3d 762, 764-65 (7th Cir. 2014). The trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial. **Anderson**, 477 U.S. at 248; **Cung Hnin v. Toa, LLC**, 751 F.3d 499, 504 (7th Cir. 2014); **Wheeler v. Lawson**, 539 F.3d 629, 634 (7th Cir. 2008).

The LCSC argues that it is entitled to summary judgment on all of the plaintiffs' claims. Essentially, the LCSC argues that there is no private cause of action to pursue damages for

alleged violations of the Indiana Constitution or Indiana Quarantine Law. According to the LCSC, to the extent that the plaintiffs' claims are seeking equitable relief, the claims are moot because the restrictions and mandates at issue were terminated as of February 2022. As for the plaintiffs' federal claims, the LCSC contends that the mask mandates, contact tracing, and quarantine procedures implemented to curb the spread of COVID-19 did not constitute an unlawful search or seizure that violated the Fourth Amendment. The LCSC also contends that the quarantine procedures did not infringe on the plaintiffs' First Amendment right to peaceably assemble. Thus, the LCSC asserts that the plaintiffs cannot bring a viable claim under Section 1983 since there was no violation of a federally protected right.

In response, the plaintiffs failed to directly address any of the arguments raised by the LCSC. Instead, the plaintiffs' response symbolizes an opinion piece, devoid of any pertinent case law supporting their claims. The plaintiffs' response predominantly concerns the special meeting held by the LCSC on August 6, 2021, which they contend violated Indiana's Open Door Law. In the same vein, the plaintiffs argue that denying the public the opportunity to speak at the special meeting violated their First Amendment rights. The plaintiffs also allude to a violation of Due Process under the Fourteenth Amendment, as well as a violation of Section 504 of the Rehabilitation Act. In any event, the First Amendment freedom of speech, Fourteenth Amendment Due Process, Rehabilitation Act, and Indiana Open Door Law claims are not listed as causes of action in the plaintiffs' Amended Complaint. Thus, those claims are not properly before this court.

    A. ***Plaintiffs' Claims Under The Indiana Constitution***

The plaintiffs contend that the LCSC's mask mandates, contact tracing, and quarantine requirements violated the following provisions of the Indiana Constitution:

5

>Article I, Section 11 (Count 4) which provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."
>
>Article I, Section 12 (Counts 1, 3) which provides "[a]ll courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law. Justice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay."
>
>Article I, Section 23 (Count 5) which provides " [t]he General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens."

**Ind. Const. art. 1.**

The Indiana Constitution does not support private rights of action for monetary damages. "Indiana and federal courts have consistently declined to find an implied right of action for damages under the Indiana Constitution." ***Caldwell v. Malave***, No. 2:19 CV 116, 2020 WL 887742, at *3 (N.D. Ind. Feb. 21, 2020). *See also, e.g.*, ***City of Indianapolis v. Cox***, 20 N.E.3d 201, 212 (Ind. Ct. App. 2014) ("[N]o Indiana court has explicitly recognized a private right of action for monetary damages under the Indiana Constitution.") (quoting ***Smith v. Ind. Dep't of Corr.***, 871 N.E.2d 975, 985 (Ind. Ct. App. 2007)); ***Ball v. City of Indianapolis***, 760 F.3d 636, 645 (7th Cir. 2014) (noting that Indiana has yet to recognize a civil remedy for violating the Indiana Constitution).

The plaintiffs' Amended Complaint made clear that they were seeking declaratory relief, not monetary damages, as it pertains to the causes of action under the Indiana Constitution. DE 20 at 32-33. In their request for relief, the plaintiffs requested a declaration that the "current mask, contact tracing, and quarantine policies" violated Indiana law and the Indiana

Constitution, as well as an order "enjoining the Defendants from further violations" of Indiana law and the Indiana Constitution. *Id.*

At any rate, there is no longer a live case or controversy between the parties under the Indiana Constitution because the policies surrounding masking, contact tracing, and quarantining are no longer in effect. Article Three, Section Two of the United State Constitution "limits federal jurisdiction to cases and controversies [and] this limitation applies at all stages of review, not merely at the time the complaint was filed." ***Lakaszczyk v. Cook County***, 47 F.4th 587, 596 (7th Cir. 2022) (internal citations omitted). "In general, a claim becomes moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." ***Murphy v. Hunt***, 455 U.S. 478, 481 (1982) (per curium).

The LCSC lifted its COVID-19 related policies in February 2022 which mooted the plaintiffs' alleged constitutional violations. There is no reason to believe that the LCSC will reinstate the mask mandate, contact tracing, or quarantine procedures in the near future. The plaintiffs did not advance any argument to suggest otherwise. Accordingly, the plaintiffs' claims under the Indiana Constitution are moot, and the LCSC is entitled to summary judgment as to Counts one, three, four, and five.

### B. Plaintiffs' Claim Under Indiana Code 16-41-9-1.5

Count two of the plaintiffs' Amended Complaint alleges violations of Indiana Quarantine Laws which provides, in part:

> If a public health authority has reason to believe that:
>
> (1) an individual:
>
>     (A) has been infected with; or
>
>     (B) has been exposed to a serious communicable disease or outbreak; and

>> (2)  the individual is likely to cause the infection of an uninfected individual if the individual is not restricted in the individual's ability to come into contact with an uninfected individual;
>
> the public health authority may petition a circuit or superior court for an order imposing isolation or quarantine on the individual.   A petition for isolation or quarantine filed under this subsection must be verified and include a brief description of the facts supporting the public health authority's belief that isolation or quarantine should be imposed on an individual, including a description of any efforts the public health authority made to obtain the individual's voluntary compliance with isolation or quarantine before filing the petition….

**I.C. 16-41-9-1.5.**

This statute does not apply here. The LCSC did not petition for the quarantining of students on an individual basis utilizing this provision of the Indiana Code. Instead, the LCSC's quarantine procedures were implemented under **Indiana Code 16-41-2-1** which provides:

> (a) The state department may adopt rules under IC 4-22-2, including emergency rules under IC 4-22-2-37.1, that establish reporting, monitoring, and preventive procedures for communicable diseases.
>
> (b) The state department shall publish a list of:
>
>> (1) reportable communicable diseases;
>>
>> (2) other diseases or conditions that pose a serious health risk based upon the characteristics of the disease or condition; and
>>
>> (3) the control measures for the diseases and conditions on the state department's Internet web site. The state department is not required to adopt rules under subsection (a) for the list described in this subsection.

In accordance with the provision above, the Indiana Department of Health (IDOH) listed COVID-19 on its list of communicable diseases and established control measures, which

included the contact tracing and quarantine procedures implemented by the LCSC. Further, pursuant to its statutory authority, the IDOH defined appropriate restrictions of activities as:

> [L]imitations placed on the activities of persons to prevent transmission of communicable diseases to other individuals. Limitations may include, but are not limited to, restrictions on one or more of the following activities:
>
> (1) Attendance/appearance at any:
>
>> (A) school;
>>
>> (B) preschool; or
>>
>> (C) daycare facility.

**410 I.A.C. 1-2.5-65**.

The LCSC followed the quarantine guidance offered by the IDOH, which included restrictions on attendance at school, to prevent the transmission of COVID-19. The LCSC's decision to adhere to the IDOH's guidance does violate Indiana Quarantine Law, even if the plaintiffs brought this action under the correct code. Further, the plaintiffs' response failed to rebut the argument advanced by the defendants.

As a result, the defendants are entitled to summary judgment on Count two of the plaintiffs' complaint.

### C. *Plaintiffs' Claims Under The United States Constitution*

Count six of the plaintiffs' complaint asserts a claim under Section 1983. DE 20, page 31. Section 1983 does not grant substantive rights but provides a conduit to vindicate constitutionally or statutorily conferred rights. ***Albright v. Oliver***, 510 U.S. 266, 271 (1994) (citing ***Baker v. McCollan***, 443 U.S. 137, 144 n.3 (1979)). To prevail under Section 1983, the plaintiffs must establish that the LCSC deprived them of a constitutional right while acting under the color of state law. ***J.H. ex rel. Higgin v. Johnson***, 346 F.3d 788, 791 (7th Cir. 2003). The

plaintiffs must first identify the constitutional right infringed to have an actionable claim under the statute. *Albright*, 510 U.S. at 271 (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989)).

> i. **Fourth Amendment Claim**

The plaintiffs first allege that the contact tracing and quarantine procedures infringed on their Fourth Amendment right to be free from unreasonable searches and seizures. The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated...." **U.S. Const. amend. IV**. "Only government activity that constitutes either a 'search' or a 'seizure' is regulated by the Fourth Amendment." *Christensen v. County of Boone*, 483 F.3d 454, 459 (7th Cir. 2007). The Fourth Amendment's provision only protects against unreasonable searches and seizures. *Florida v. Jimeno*, 500 U.S. 248, 250 (1991). A Fourth Amendment seizure of a person can occur through "physical force" or "a show of authority" that "in some way restrain[s] the liberty of" a person. *Terry v. Ohio*, 392 U.S. 1, 19, n.16 (1968).

At the onset, the plaintiffs failed to explain how the LCSC policies constituted a search or seizure under the Fourth Amendment. Assuming arguendo that the plaintiffs could establish that the LCSC's contact tracing and quarantine procedures constituted a seizure, the plaintiffs still would have to show that the seizure was unreasonable. The plaintiffs are unable satisfy this burden. States have police powers under the Tenth Amendment to protect the health, safety, and welfare of its residents. *See Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 569 (1991). States, therefore, "traditionally have had great latitude under their police powers to legislate as to the protection of the lives, limbs, health, comfort, and quiet of all persons." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475 (1996).

To control the spread of diseases such as COVID-19, states, including Indiana, enacted guidelines and orders implementing the use of isolation and quarantine procedures. Courts throughout the country have upheld the constitutionality of such state action during a novel pandemic. *See e.g.*, ***Klaassen v. Trustees of Indiana University***, 7 F.4th 592, 593 (7th Cir. 2021); ***Bayley's Campground, Inc. v. Mills***, 985 F.3d 153, 164 (1st Cir. 2021); ***McArthur v. Brabrand***, 610 F. Supp. 3d 822, 837 (E.D. Va. 2022); ***Six v. Newson***, 462 F. Supp. 3d 1060, 1069 (C.D. Cal. 2020).

Since the LCSC relied on the reasonable recommendations issued by federal, state, and local authorities to combat the spread of COVID-19, it cannot be said that restricting the plaintiffs from attending school or school events was an *unreasonable* search or seizure. As a result, the plaintiffs' claim under the Fourth Amendment fails.

ii.     ***First Amendment Claim***

The plaintiffs also allege a First Amendment claim asserting that the LCSC's quarantine procedures infringed on their children's right to peaceably assemble at school. Although not raised in their complaint, the plaintiffs' response also insinuated that the LCSC's decision to exclude audience time during the special school-board meeting violated their freedom of speech as well. Even when favorably construed in the plaintiffs' favor, these arguments fail.

Any regulation of speech or assembly on government property must be able to withstand some degree of constitutional scrutiny. The level of scrutiny depends in part on the nature of the public property at issue. See ***Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n***, 460 U.S. 37, 45-46, 1983). The Supreme Court generally recognizes four types of forums: the traditional public forum, the designated public forum, the limited public forum, and the nonpublic forum.  *See, e.g.*, ***Walker v. Texas Div., Sons of Confederate Veterans***, 576 U.S. 200, 215–16 (2015).

Government entities have the least amount of latitude in restricting access to traditional public fora, such as spaces like streets and parks that are generally "open for assembly and debate." *Perry*, 460 U.S. at 45, 55. On the other hand, speech or conduct in a nonpublic forum is subject to significantly greater regulation than speech in a traditional public forum. For First Amendment purposes, public property not open for public communication by tradition or designation is considered a "nonpublic forum." *Surita v. Hyde*, 665 F.3d 860, 869 (7th Cir. 2011). A school is generally considered a nonpublic forum for purposes of the First Amendment. See *Vukadinovich v. Bd. of Sch. Trs. of Mich. City Area Schs.*, 978 F.2d 403, 409 (7th Cir. 1992). Schools may restrict expressive activity if such activity "materially disrupts classwork or involves substantial disorder or invasion of the rights of others." *Tinker v. Des Moines Indep. Community Sch. Dist.*, 393 U.S. 503, 513 (1969).

In this case, the LCSC's quarantine policy barred the plaintiffs' children from attending school for a limited time in an effort to curb transmission of the virus to other students and staff. The LCSC's concern for the safety of students and staff was a legitimate reason to minimally regulate the assembly of potentially infected students. In fact, the Supreme Court has held that "[s]temming the spread of COVID-19 is unquestionably a compelling interest." *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) (per curiam). The plaintiffs failed to show how this action was constitutionally unreasonable. As a result, the plaintiffs' right of assembly claim under the First Amendment fails.

The school board meeting on the other hand constituted a limited public forum. *See Perry,* 460 U.S. at 46. In a limited public forum, "the State is not required to and does not allow persons to engage in every type of speech. The State may be justified in reserving [its forum] for certain groups or for the discussion of certain topics." *Good News Club v. Milford Cent. Sch.*,

533 U.S. 98, 106 (2001) (internal quotation omitted) (considering school facilities open for a wide, but not unlimited, range of expressive activity a "limited public forum"). Restrictions on speech in a limited public forum must be viewpoint-neutral and reasonable in light of the forum's purpose. *Perry*, 460 U.S. at 46.

The plaintiffs failed to establish that the special school board meeting held on August 6, 2021, violated a constitutionally protected right. The special meeting, although open to the public, did not have audience time. Thus, the LCSC did not discriminate between speakers, viewpoints, or topics. Accordingly, the LCSC is entitled to summary judgment on the plaintiffs' First Amendment claim.

Lastly, the plaintiffs make a passing reference to a violation of the Indiana Open Door Law (IC 5-14-1.5), but this claim is absent from their Amended Complaint. Nonetheless, although the Indiana Open Door Law requires all meetings of governing bodies of public agencies "be open at all times for the purpose of permitting members of the public to observe and record them," it does not, however, provide an unfettered right for the public to speak at such meetings. **IC 5-14-1.5-3**. Whether analyzed under federal or state law, the First Amendment and free speech claims fail.

  iii.  ***Fourteenth Amendment Due Process Claim***

The plaintiffs also mention a violation the Due Process Clause of the Fourteenth Amendment. According to the plaintiffs, the LCSC failed to provide notice and a meaningful opportunity to be heard before it allegedly deprived them of their liberty interest relating to raising their children, suggesting a procedural due process claim. DE 42 at 16. Again, there is no Fourteenth Amendment Due Process claim listed in the plaintiffs' Amended Complaint, but the court briefly addresses the issue.

The Due Process Clause of the Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property, without due process of law." **U.S. Const. amend. XIV, § 1**. To make a claim for violating procedural due process, a plaintiff must first establish that the "interest" in question "is within the Fourteenth Amendment's protection of liberty and property." ***Board of Regents of State Colleges v. Roth***, 408 U.S. 564, 570 (1972). If a court determines that "protected interests are implicated, [it] then must decide what procedures constitute 'due process of law.'" ***Ingraham v. Wright***, 430 U.S. 651, 672 (1977).

Indeed, the right of parents to raise their children without undue interference from the state is well established. See ***M.L.B. v. S.L.J.***, 519 U.S. 102, 117 (1966). That said, this right is neither absolute nor unqualified. ***Brokaw v. Mercer County***, 235 F.3d 1000, 1018 (7th Cir. 2000). During a novel pandemic, the parental right to control the upbringing of a child must give way to a school's ability to ensure the safe return of students to the classroom. The "[p]rotection of the health and safety of the public is a paramount governmental interest which justifies summary administrative action." ***Hodel v. Virginia Surface Min. & Reclamation Ass'n, Inc.***, 452 U.S. 264, 300 (1981).

The plaintiffs identified no cases holding that school masking, contact tracing, or quarantine requirements violated their liberty interest in raising their children. Consequently, the plaintiffs cannot establish that the LCSC's policies infringed on their or their children's liberty interest under the Fourteenth Amendment.

Overall, the plaintiffs failed to state a viable claim under both the First, Fourth, and Fourteenth Amendments. This deficiency effectively eliminates any action brought under Section 1983 because the plaintiffs failed to establish the necessary element of showing the deprivation of a constitutional or federally protected right.

*Conclusion*

Based on the foregoing reasons, the LCSC's Motion for Summary Judgment [DE 36] is **GRANTED.** This matter is **DISMISSED**.

ENTERED this 2nd day of August 2023.

/s/ Andrew P. Rodovich  
United States Magistrate Judge